are federal law and binding on the states. See *U.S. v. Benitez*, 28 F. Supp. 2d (S.D. Fl. 1998).

**The International Covenant on Civil and Political Rights** (ICCPR), June 8, 1992, 144 countries, article SIX, in relevant part provides for the *meaningful* review and grants of clemency.

This flies in the face of the current virtually farcical procedures, which provide for no meetings, no information about seeking clemency, no guidance as to what is reviewed or considered, no provision for assistance as a matter of right, no protections at all. The Board may meet or not meet, decide a man or woman's fate via phone, fax, or tossing a coin under the current lack of guidelines. [See attached rules for clemency and commutation applications, article from Houston Chronicle re the lack of meaningful clemency.] This Court should hold an evidentiary proceeding and examine evidence, documents, expert opinion, and witnesses, and comparable regulations and procedures in other jurisdictions, and should grant relief to the Applicant on this point and stay his death sentence until such time as the pardon procedures are brought into treaty compliance.

12. THE APPLICANT IS ENTITLED TO RELIEF FROM HIS SENTENCE OF DEATH AS THERE IS SIGNIFICANT NEW EVIDENCE THAT HE IS LIKELY TO EVER COMMITT ACTS OF CRIMINAL VIOLENCE THAT WOULD CONSTITUTE A THREAT TO SOCIETY.

The Applicant has been a well-behaved prisoner on death row for twelve years. [See Affidavit of Preston Hughes; Opinion letter from Dr. Seth Silverman, Board Certified Forensic Psychiatrist, attached as exhibit]

He has no significant history of discipline problems. He has reached an age where rates of offense among the population of males drops off dramatically. In the 1998 Cunningham study, authored by Mark D. Cunningham, PhD, and Thomas J. Reidy, PhD, and referred to for a baseline comparison by Dr. Silverman, some astonishing results came to light.

First, overall, capital murderers who are released have some of the lowest re-offender rates ever seen. Second, the Applicant is at the age when the statistical likelihood of being involved in new offenses drops off so dramatically it appears like a drop form the sky on any actuarial graphic representation. [See "Investigating Base Rate Data in Violence Risk Assessments at Capital Sentencing", Behav. Sci. Law, Vol 16, p. 71-95, by Mark D. Cunningham and Thomas J. Reidy, attached as exhibit]

In fact the groups studied tend to exhibit a lower rate for overall violence than the general population at large. These statistically significant findings are directly applicable to the Petitioner as he fits well within those categories outlined by the study, and additionally has no organic impairment that would prevent him from continuing to modify his behavior. When one combines these dramatic new studies, not previously available, with the individualized risk assessment and history of Mr. Hughes, it becomes clear that he no longer poses a danger to anyone. This is particularly in a maximum security prison where the inmates are locked down for 23 hours per day, every day.

How then does one review such evidence? Well, the Court of Criminal Appeals gives ample guidance, as they considered the sufficiency of the future dangerousness evidence on direct review in this case. In *Burns v. State*, 761 S.W.2d 353, 356 (Tex. Crim. App. 1988) the Court claimed that in weighing future dangerousness evidence, the jury is entitled to consider the following, but is not limited these factors alone:

1. the circumstances of the offense, including the defendant's state of mind;
2. the calculated nature of the defendant's acts;
3. the forethought and deliberateness of the crime's execution;
4. the existence of a prior criminal record, and the severity of that record;
5. the defendant's age and persona circumstances at the time of the offense;
6. whether the defendant was acting under duress or the domination of another at the time of the offense;
7. psychiatric evidence and haracter evidence.

See also *Keeton v. State,* 724 S.W.2d 58 (Tex. Crim. App. 1987). As already mentioned in one prior claim, part of the Petitioner's criminal record was overturned after sentencing, a factor which also bears review now. No psychiatric evidence was ever offered, pro or con, until now. The Defendant offered good character evidence in the form of acts and reputation from friends and family, and would likewise submit that his good behavior over twelve years in prison is an excellent view towards his likely future behavior. Even if one assumed, for the sake of argument, that the statements Mr. Hughes gave were true, [which the Petitioner does not concede] they reflect no planning or deliberateness in the encounter, no calculation.

In answering the question of Special Issue Number Two under Article 37.071 of the Texas Code of Criminal Procedure, the jury is essentially asked to guess what will happen in the future, based upon the recent past. The question then becomes this: In a state which relies upon the jury's answer to this question to impose a death sentence, what remedy is available if the jury guesses wrong?

Certainly there are those who continue to commit crimes even inside. Fights, disciplinary problems, charges for crimes committed inside, all can and do occur in prison. Yet for twelve years, among the lowest of the damned, Mr. Hughes has not been one of them. In order for a state to claim

that it has a system that will pass Eighth Amendment muster, there must be judicial review of the process that gets an inmate to his execution. The Court of Criminal Appeals has entertained such cases on direct appellate review, but no remedy exists for the situation where one has obtained new evidence that indicates the answer to the second Special Issue should have been, or is now, "No". Twelve years of such evidence is more than the adult life that Mr. Hughes had to offer the jury when he was sentenced. It ought to matter now, if the tenants of *Furman v. Georgia* are to be met. There must be a venue on collateral review to offer such evidence if it was not offered or obtainable prior to this. That is the evidence the Applicant offers now, and it should merit relief from this Honorable Court. The Applicant respectfully prays that this Court will grant his relief and vacate his death sentence on the basis of newly acquired evidence of lack of future dangerousness.

WHEREFORE, PREMISES CONSIDERED, the Petitioner prays that this Honorable Court will grant this motion in all things and issue an order to set an evidentiary hearing, in accordance with the applicable provisions of Sec. 2254 and the Habeas Rules, that it issue findings of fact and conclusions of law, and that it issue the writ and grant relief.

Respectfully Submitted,

*[signature: M. C. C. for P. McCann]*
Patrick McCann
TBA  00792680
3700 N.Main
(713) 223-3805

*[signature: Marc C. Carter]*
Marc C. Carter
TBA 00787212
909 Fannin, Suite 1650
(713) 425-4304

## Certificate of Service

I certify that a true and correct copy of this writ was mailed to the Attorney for the State of Texas on November 21, 2001.

*[signature]*
Marc C. Carter

332