United States Courts
Southern District of Texas
FILED

APR 0 5 2002

Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON HUGHES III, | * | |
| Petitioner | * | |
| v. | * | Civil Action # 4:01-CV-4073 |
| | * | ***This is a capital case***** |
| | * | |
| JANIE COCKRELL, | * | |
| Director, Texas Department of | | |
| Criminal Justice, Respondent | | |

## PETITIONER'S TRAVERSE TO THE STATE'S ANSWER AND
## MOTION FOR SUMMARY JUDGEMENT

**Introduction**

The Petitioner, Preston Hughes III, by and through his appointed attorneys, files this, his Traverse, pursuant to 28 USC Section 2241 and 2254, and contests each and every point made by the Respondent, Janie Cockrell [hereafter referred to as "the Respondent" or "the State"] and offers this brief in support.

None of the Petitioner's claims are procedurally barred, or if so, are excused from such default for reasons the Petitioner will make clear in the following paragraphs. The State concedes that Claim Five, regarding improper jury argument, is not procedurally barred. Likewise, none of the claims advanced by the Petitioner are barred based upon reasonable findings of fact and proper conclusions of law as determined by a state court. The Court of Criminal Appeals [CCA] never issued findings of fact or conclusions of law with regard to the claims advanced here. Rather, the



Court issued a blanket order dismissing such claims as an abuse without listing the basis for its decision in any way. Nor are claims four, five, six, seven, eight, nine, ten, eleven, or twelve barred by application of *Teague v. Lane,* 489 U.S. 288 (1989).

## Statement of the case

The Petitioner acknowledges that the Respondent's recitation of the procedural history is correct, and likewise gratefully acknowledges the State's agreement with Petitioner regarding the timeliness of the filing.

Where the Petitioner differs with the State however, is in the propriety of the State dismissing the subsequent application of the writ as an abuse. This difference is best established in a subsequent section of this traverse; however in a quick summary, it is difficult to fathom how, under its own rules for a subsequent writ application under Texas Code of Criminal Procedure Article 11.071, Sec 5, the Court of Criminal Appeals could dismiss new factual evidence or a decision of the Supreme Court that was subsequent to its original determination.

In this same vein, it is difficult for the State to argue that challenges to the state habeas and post conviction procedures can be brought anywhere else but in a post conviction setting. It is equally difficult for the Respondent to defend state misconduct in obtaining the confession, in failing its Brady obligations, in admitting a conviction for punishment that was later overturned on appeal, and in improper jury argument regarding the defense cross of a child witness.

The Petitioner will discuss each and every point of relief claimed and its merits and procedural correctness in direct rebuttal to the State's motion.

**Statement of the facts**

The Petitioner disputes each and every factual rendition by the State except those specifically admitted herein. In particular the Petitioner contests the following:

I.

Evidence of the crime: As noted in the Petitioner's application before this Honorable Court, the Petitioner's contests the validity of any statement taken which was the basis for his conviction. The "confession" referred to by the State was actually a series of statements taken from the Petitioner, after he was taken from his apartment during the wee hours of the morning, partly drunk from the night before, and without sufficient evidence. He was interrogated without an attorney present, left in the Houston City Jail overnight WHERE HE WAS BEATEN HALF-UNCONCIOUS by the HPD jailers. [See the reports and statements of the Internal Affairs division conducted after Petitioner filed an immediate complaint against his jailers, attached to the application] He was brought back to the Homicide division the next day when the detectives realized that they had not coerced a sufficient statement to aid them in closing out both killings.

II.

Punishment evidence: The State concedes that the Petitioner's sexual assault conviction, admitted before the jury during punishment, was later overturned by the Court of Criminal Appeals three years *after* his sentence of death. [See *Hughes v. State*, 833 S.W. 2d 137 (Tex. Crim. App. 1992). The accusation of assault in the case in New York was not proved. The

State must then admit that the jury heard impermissible evidence in making its decision with regard to Petitioner's death.

### Brief in Support

Motions for Summary Judgement are indeed appropriate for habeas cases. *Blackledge v. Allison*, 431 U.S. 63 at 80 (1977). See also *Clark v. Johnson*, 202 F.3d 760 (5th Cir. 2000), also Rule 11 of the Rules Governing Sec. 2254 cases. However, the burden is on the Movant in a summary judgement motion, and to prevail he must establish something a bit different than what the State contends. In quoting the very same case as the State cites as authority, it is noted that, in regard to the grant or denial of summary judgement, "....This is true even where the evidence is likely to be within the possession of the defendant, *as long as the plaintiff has had a full opportunity to conduct discovery.* We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." [emphasis added] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Likewise, the Fifth Circuit has stated that, in granting a Certificate of Appealability, or COA, [replacing the old "certificate of probable cause" but maintaining the same dimensions] that in a capital case, all doubts should be resolved in favor of the capital defendant. *Clark v. Johnson*, 202 F.3d 760 (5th Cir. 2000). This would seem a useful guide as well in determining whether to grant a State Motion for Summary Judgement where a Petitioner's life hangs in the balance.

The Supreme Court defined the primary inquiry under *Liberty Lobby* as one of "materiality", i.e., a factual matter germane to the claim. It is this factual inquiry that the District Court must make first. If there is a factual

dispute then the summary judgment motion cannot be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Again, per the case, this can only be true where discovery [or, in a habeas situation, one may assume, reasonable factual development] has taken place. This has not yet happened here, and the Petitioner is asking this Court for discovery or, in the alternative, expansion of the record as requested in separate filings.

Here, the Petitioner has offered factual disputes regarding the voluntariness of the statements beaten from him, a record from trial which clearly shows an improper *Brady* violation [and whose impact can only be determined from more fact-finding], and challenges to the factual sum of the evidence itself in regard to the second killing. The State itself has conceded the fact that one of the convictions relied upon by the jury in determining the Petitioner's fate was later overturned. The Petitioner's claim on improper jury argument on the cross of a child witness is directly supported in the record, and the state trial judge himself ruled it improper. The Petitioner has also brought forward statistical evidence and new legal claims regarding the denial of equal protection. He has brought to this Honorable Court's attention long-standing treaty obligations that directly impact the Petitioner's death sentence and his ability to seek clemency. He has challenged the structure of the death-sentencing scheme in Texas, and last, has brought forth dramatic new factual evidence via medical expert that was not available before, evidence that must force a re-evaluation of the Petitioner's true "future danger" to society.

There could not *be* more factual disputes in this instance. It is this large set of factual disputes that must guide this Court in deciding the motion before it. Unfortunately, the Court cannot take guidance from the Texas Court of Criminal Appeals in this matter because it has not issued a clear set

of fact findings or conclusions of law on the issues before it, though it had the chance to do so under the Petitioner's second writ. Its dismissal order offers no guidance as to the basis for its decision. It references little or nothing in regard to the Petitioner's issues, even though the equal protection claims were based upon new Supreme Court precedent under *Bush v. Gore* __U.S.__ (2000), and the new factual claims were based upon evidence not discoverable at the time of trial. The State court has had these claims before it and simply refused to deal with them.

### Procedural Default:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both <u>independent</u> of the merits of the federal claim <u>and an adequate</u> basis for the court's decision. [Emphasis added] *Coleman v. Thompson,* 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). To satisfy the "independent" and "adequate" requirements, the dismissal must "<u>clearly and expressly</u>" indicate that it rests on state grounds, which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. *See Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995). [Emphasis added] This rule applies to state court judgments on both substantive and procedural grounds. *Id.* Where there has been one <u>reasoned state judgment</u> rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S 797, 803 (1991). [emphasis added]

It is clear from precedent that "procedural default" is not a talisman behind which the State may hide.  Simply invoking the phrase does not immunize the case from review, and even if it is found that a procedural bar does exist, it can be overcome by the Petitioner presenting "cause and prejudice" for the default, or by a demonstration that the refusal to circumvent the bar would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

In fact the very concept of "abuse of the writ" must be challenged here.  The State relies upon its invocation by the Court of Criminal Appeals to shield it from having to argue the merits.  It cannot do so.  The very doctrine of abuse of the writ, as cited by the State, is a false and misleading one.

To illustrate, the State cites to *Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2001) for its proposition regarding the "well-established doctrine of abuse of the writ" as an adequate and independent state ground for denial of the Petitioner's claims.  Examining *Finley*, one finds that it in turn cites to *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997) for that same proposition. *Nobles* in turn cites to *Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994) for its justification of invoking the *independent* state doctrine of abuse of the writ.  Barber is a plurality opinion in which only the footnote explains that "well established state doctrine" and bases it upon *federal case law decided by the Supreme Court of the United States*! Here is

what the Judges [those few who actually participated] actually said :

[emphasis is added]

n.1 "..The federal courts recognize that a second writ of habeas
corpus that raises new issues or questions of law is presumed
to be an abuse of the writ if it appears that the writ is
being used as a delaying tactic, and that the states have a
recognized interest in preventing such abuses. *Barefoot
v. Estelle, 463 U.S. 880,* 103 S.Ct. 3383, 3395, 77
L.Ed.2d 1090 (1983), (affirming a Texas state case where the
death penalty was imposed and affirmed by this Court). Where
a petitioner on a subsequent writ complains of error that
existed when the first writ application was filed, some
federal courts consider this to be an  abuse of the writ
process. *McCleskey v. Zant,449 U.S. 467,* 493, 111
S.Ct. 1454, 1470, 113 L.Ed.2d 517, 545 (1991), *reh'g
denied* 501 U.S. 1224, 111 S.Ct. 2841, 115 L.Ed.2d 1010;
see also *Russell v. Collins,* 944 F.2d 202, 205 (5th
Cir. 1991).

The second writ will not be considered to be an
abuse if the applicant can show cause for raising a new point
after one writ of habeas corpus has already been filed.
*McCleskey* 499 U.S. at 498, 111 S.Ct. at 1472, 113
L.Ed.2d at 547; *Russell* 944 F.2d at 205.

  It may well be that in order to reduce the unnecessary waste
of time and expenses to the court system incurred by numerous
applications for writs of habeas corpus, this court should
consider refusing to hear writs that raise points of error
that were available when the first writ was filed, unless good
cause may be shown by the applicant for his failure to raise
these points in his previous writ of habeas corpus.
  Applicant's case demonstrates two situations constituting
good cause for hearing a second writ of habeas corpus. The
first is where, as here, the applicant's first writ raises an
issue that, through no fault of his own, is not adjudicated.
Good cause exists where a point of error has been previously
raised by an applicant in a writ of habeas corpus but it was
not decided upon by the court, and is again raised in a
subsequent writ. The second situation is where the failure of
counsel to object to the admission of testimony at trial is
not a waiver of error because a constitutional defect has not
been identified at the time of trial.  When such a defect is

identified after the trial, and its status is applied
retroactively (as is the case with *Estelle v. Smith*),
the applicant should be allowed to raise the issue in his
first subsequent writ of habeas corpus.

While applicant's case clearly establishes good cause, there
are also unusual and compelling circumstances that absolve
applicant from blame for the delay in reaching the
*Estelle* point raised in applicant's pro se writ filed
in April 1983. First of all, this court had the authority to
consider that writ despite his pending appeal, see *Hill v.
State,633 S.W.2d 520* (Tex.Crim.App. 1982) (McCormick,
J., on rehearing), but we elected to take no action and heard
the direct appeal instead. In hindsight, this Court should
have reconsidered the writ allegations after receiving
appellant's brief and considered the ground then.
*Hill,* supra.  Instead, this Court chose to ignore
applicant's pro se writ, which was filed two years after
*Estelle v. Smith* was written, and heard only the
complaints stated in the brief filed by his attorneys.

Moreover, applicant's direct appeal was pending before this
Court at the same time that he filed his pro se writ of habeas
corpus and his attorneys had not yet filed the appellant's
brief in this Court.  The direct appeal was set for submission
before this Court on May 25, 1983.  The applicant's attorneys
could have raised the *Estelle v. Smith* issue on the
direct appeal in the appellant's brief, or in the alternative,
they could have requested the court to consider applicant's
writ application concomitant with the appeal, *Hill,*
supra. Unfortunately, applicant's attorneys pursued neither
course of action and instead allowed this constitutional issue
to go unchallenged before this Court.

Finally, the district attorney who prosecuted this case on
appeal also failed to address the *Estelle v. Smith*
issue, despite his knowledge of the pro se writ of habeas
corpus, thereby contributing to the extreme delay with which
this issue has finally come before this Court...."

*It is a myth* that the Texas Courts have "long" had an independent

or adequate state ground for any dismissal.  Per the cases cited to by the

State, Texas simply adopted a prevailing federal doctrine as recently as

1994. Thus their claim of procedural default for all the claims fails in each and every count. Essentially, there is no bar to this District Court's full and fair review of all the constitutional claims. See *Ford v. Georgia*, 498 U.S. 411, 423 (1991).

Not only is this doctrine subject <u>not</u> independent, it is not adequate either. *Barber* itself invokes a doctrine of "cause", not prejudice, simply "cause" for failure to present a claim. It recognizes exceptions to the adopted federal doctrine of abuse of the writ, explicitly both when the failure to present is not the Applicant's fault, and when he or she is prevented from doing so due to unreasonable actions of the attorneys. It also implicitly recognizes that there can be other causes that will excuse the failure. It finally acknowledges the fact that, since the CCA is the *sole* court which decides capital cases, it always has the authority to recognize and deal with whatever questions it wishes to, and should have done so in the instance at hand in *Barber*. [See N.1 above] Thus it provides reasons and justification for it to ignore its own doctrine as it wills.

The CCA in fact did have all these issues before it in the subsequent application and could have dealt with them if it so chose, under either this *federally based* doctrine as outlined in the *Barber* footnote or under the exceptions provided under Section 5, Article 11.017, of the Texas Code of

Criminal Procedure. Since it is a matter within the discretion of the Court of Criminal Appeals as to whether it will or will not hear a subsequent application, the assertion of a procedural bar will not prevent federal review. *Williams v. Georgia*, 349 U.s. 375, 389 (1955). See also *Wells v. Maas*, 28 F.3d 1005, 1009-10 (9th Cir. 1994). The State's argument regarding the abuse of the writ doctrine is simply not correct under the cases cited, and cannot stand in the way of review of these claims.

Even if for some reason the State actually did have an independent and adequate procedural ground for denial, it does not provide any reason for this Honorable Court to refuse review based upon its dismissal order. The order does not point to any factual basis for its decision, or any legal reason why it could not consider the claims or whether it actually reached the merits of the claims. To quote *Coleman v. Thompson*, 501 U.S. at 732, "...It is not always easy for a federal court to apply the adequate and independent state ground doctrine. State court opinions will, at times, discuss federal cases at length and mention a state law basis for a decision only briefly. In such cases, it is often difficult to determine if the state law discussion is truly an independent basis for decision, or merely a passing reference. In other cases, state opinions purporting to apply state law will derive principles by reference to federal constitutional decisions from this

Court. Again, it is unclear from such decisions whether the state law is independent of federal law."

One simply cannot tell from the CCA's order whether or not it reached the merits, or whether there was any basis for the Texas court to make such a dismissal order, or what clear and express factual or legal theory drove the issuance of the order. In such instances, the District Court should review the claims. *Coleman v. Thompson*, 501 at 735. Accord, *Harris v. Reed*, 489 U.S. 255 (1989).

### Cause and prejudice

For the sake of argument, however, let us suppose, that this Court should find one or more of the claims may be procedurally barred. The doctrine still does not prevent review of the claims if the Petitioner can show cause and prejudice. In this instance he certainly can, because the Petitioner here was the victim of a cruel dilemma. When he was first appointed counsel and filed his original application, he was under what has locally in Harris County been referred to as "the cusp" in his habeas timing. The "cusp" refers to the fact that in Texas, the state habeas procedure changed in 1995, just prior to the passing and implementation of the federal Anti-Terrorism and Effective Death Penalty Act of 1996 [AEDPA]. Prior to 1995 there was no appointed counsel system in Texas, and during the first part of

1996 most appointed counsel, uncertain of the impact of AEDPA and whether or not Texas would become an "opt-in" state under its provisions, filed "skeletal" writs outlining potential claims in order to preserve some type of review on post-conviction for their clients.

This act was forced upon them because if they gambled wrong and failed to file something by the generally agreed six month opt-in date, they might risk waiving all their client's chance at review. However, if the skeletal writ was filed in the timeline every attorney and Petitioner feared would be imposed, any later modification or additional filling would by definition be a "subsequent writ". That would make them subject to a State-raised claim of "abuse of the writ", at least under the interpretation of cases provided here by the Respondent.

Although the Petitioner has pointed out that the State's argument has no merit in regards to this "false flag" of abuse of the writ, it simply cannot be allowed to prevent federal consideration of constitutional rights raised and presented to the appropriate state court by invoking a defense that was imposed upon the Petitioner by the near-simultaneous acts of the Texas legislature and the United States Congress. The Petitioner was truly damned if he did file, and damned if he did not, in this instance. While subsequent decisions have made it clear that Texas is not an "opt-in" state, that was

absolutely not resolved when the Petitioner filed his first claim. How, under those facts, can this Honorable Court support denying review of constitutional claims in a capital case?   The Petitioner is either prevented from investigating claims and developing facts to present to an appropriate court, or he is prevented from arguing claims he did manage to investigate. There is both cause and prejudice here, and it is plain to see. *McClesky v. Zant*, 499 U.S. 467, 497 (1991).

### Miscarriage of justice

If a court determines that an issue is procedurally defaulted and that no cause or prejudice can be shown as to the default, a court may still review the claims raised if a failure to do so would result in a "fundamental miscarriage of justice". As a last item for this Honorable Court to consider, the State appears to deny that the Petitioner has raised an issue of a fundamental miscarriage of justice.   Yet perhaps it is the State's interpretation of what a fundamental miscarriage consists of that requires review.   The State argues that under *Schlup v. Delo*, 513 U.S. 298, 316 (1995), a Petitioner must establish a colorable claim of innocence of the crime to overcome both procedural default and a lack of cause and prejudice. Yet if one is convicted and sentenced to die in a trial wherein the State failed to prove up the elements essential for imposing a death sentence, how can

14

that fail to meet the requirements of a miscarriage of justice under the Eighth and Fourteenth Amendments? The true standard by which this claim should be viewed is under *Sawyer v. Whitley*, 505 U.S. 333 (1992) wherein one can be actually innocent of the death penalty.

There are two obstacles before this Court, both of which are attacked in the petition. The first is that, absent the series of coerced statements placed before the jury, the State had neither any physical evidence nor any witnesses to the crime that would have convicted the Petitioner. The State's entire case hinges upon his statements. Absent them, the State's case itself would be subject to an attack under *Jackson v. Virginia* for insufficiency. Additionally, it is only recently that the technology has advanced sufficiently for analysis of blood, hair, and saliva to be fairly certain of a DNA match against an accused. Yet, under either the State's response or its opposition to expanding the record, the very "actual innocence of the crime" evidence which the Petitioner seeks is denied to him. While this is important contextually, what is more important is that the Petitioner has in fact, both through the examination of the medical expert and through the legal argument against the sufficiency of the evidence in regard to the second killing, *already* made a claim of innocence in regard to the death penalty. Thus, it is the *Sawyer* standard that should control, and

there the Petitioner meets his threshold.  There should be no bar to review of his claims.

## **Traverse on the merits**

**Claim one:**

Petitioner Hughes presented new evidence in affidavit and via investigative records regarding the fact that he was beaten half-unconscious during his overnight stay in the Houston City jail.  He was initially taken in for questioning and, based upon his affidavit, abused, coerced, threatened, and tricked into giving several statements, the last of which was used against him in regards to the killing of the young woman.  Then he was placed in the custody of the Houston jail, whose night shift personnel, per his complaint in the Internal Affairs investigation, beat him throughout the night.  The next day he was again taken by a second team of interrogators in order to force a second statement from him regarding the death of the young boy in this case.  None of these points, though presented to the Texas Court of Criminal Appeals in a subsequent application, were addressed, and the Internal Affairs' records were not available at trial.  Claim one is meritorious and the Petitioner should be granted relief, or, in the alternative, additional fact-finding by hearing, discovery, or expansion of the record.

**Claim two:**

The facts regarding this claim are not in dispute. The State failed to produce results in the crucial test of bloodstains until just before an expert's appearance at trial. The crucial question here, as correctly pointed out by the State, is not whether the prosecutor deliberately or negligently suppressed the testing and the results; it was the timeliness of the information. See *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985).

It is difficult to understand how any failure to reveal possession of meaningful, crucial physical evidence in a rape double murder case is not material. Other than the statements, the only real evidence the State had would have been the physical crime scene evidence. To fail to reveal that those results could not in any way tie the defendant to the crime, and then to falsely reference them during argument, is exactly the type of ambush that Brady was designed to prevent. It is not speculation to point out that any defense attorney in a capital case would have prepared a very different defense had that information been given to him in a timely manner. The conclusions were always objectively unreasonable under these facts.

**Claim three:**

The third claim centers around the insufficiency of the evidence in regard to the deliberate killing of the second deceased, the young boy in this

case. The State correctly summarizes the law in this case; where the Petitioner believes it errs is in the law's application to the facts as adduced. Even assuming arguendo that the second statement given by Mr. Hughes was correct, it does not describe "deliberate" conduct in the common sense of the word. "Deliberate" is defined by the 1996 Merriam-Webster's Collegiate Dictionary as - "1. Characterized or resulting from careful and thorough consideration …3. Slow, unhurried, steady as though allowing for time for decision on each individual action involved." Nothing could be further from the sudden hasty actions described in the applicable statement offered by the State. Nothing could likewise be further from the mental impairment described so well by the medical expert, Dr. Silverman, in his opinion letter attached to the petition. Even viewed in the "light most favorable" prism, there was simply not enough evidence to answer "Yes" to this special issue. The Petitioner is entitled to relief on this claim.

**Claim four:**

The State cannot argue that the admission here of an overturned conviction was proper in a death sentencing procedure, nor does it try. Instead it argues that the admission before a jury of a conviction for aggravated assault in a jury which was determining his life or death was somehow harmless. Then, in relying upon this argument, it does not

recognize either the effect of testimony regarding this issue nor does it acknowledge that in such a situation a defendant would ordinarily be forced to respond and deny the allegations, if only to counter what was improperly presented in the first place. *Johnson v. Mississippi*, 486 U.S. 578 (1988) was not distinguishable because the prosecutor pointed to the violence implicit in the aggravated assault as an example of the Petitioner's future danger to society. Thus it was critical to the jury's debate on this, and in no way can this Honorable Court safely assume that there was no impact on the decision to impose death. Likewise this is not a "new" rule under *Teague v. Lane,* 489 U.S. 288 (1988), since Johnson was decided in 1988, well before this trial and well before the conviction was overturned. The Petitioner's claim is meritorious. He should be granted relief or, in the alternative, further factual development via discovery, a hearing, or expansion of the record as appropriate.

**Claim five:**

The State here essentially concedes that the prosecutor's comments were improper, citing to the CCA's opinion that the attacks against counsel based upon the cross of a child witness were wrong. [State's response, p. 29]. It errs in thinking that the federal petition does not claim that only the trial prosecutor's comments were the problem; had the requested mistrial

been granted, there would not have been a claim, so the claim necessarily includes the failure to grant the mistrial as it flowed from the comments. The State errs in thinking that attacking the trial counsel for performing his Sixth Amendment obligations does not render a capital trial fundamentally unfair.

The trial court itself implicitly recognized this when it sustained the objection and instructed the jury.  It simply did not go quite far enough in granting relief when this manifestly improper action took place.

*Darden v. Wainwright* is the State's choice for review in this claim. However, the State misinterprets its holding as applied to these facts. Darden specifically refers to the fact that the defense invited some of the improper responses. *Darden*, 477 U.S. at 179.  It also pointed out that the only reason the Supreme Court agreed that the claim in *Darden* should be denied was that the improper argument did not implicate any *other* rights *Darden*, 477 U.S. at 182.  Here, the attack was uninvited and directed at the defendant's right to cross-examine witnesses. The deprivation of such a right does render a trial unfair.   Amend. VI, U.S. CONST. More, the State's response to the cases cited by the Petitioner illustrate how to review improper jury argument, and as such are indeed proper for this Court to consider in weighing its response. No *Teague* bar exists as the very case the

20        384

State cited was decided in 1986, and existed when *Teague* was decided. Thus it is difficult for the State to argue it creates a "new" rule. The Petitioner's claim is in fact meritorious on this point, and relief should be granted, or additional fact-finding conducted.

Claim six:

In this response the State relies heavily upon *Penry v. Lynaugh*, 492 U.S. 302 (1989) [Penry I] for its analysis. This might be a valid review but for the fact that Penry II has been decided, and actually in the verbage of that decision, the Supreme Court essentially comes down squarely on the side of the Petitioner.   See Penry v. Johnson ____U.S. ___ (2001).  To wit, in Penry II, Justice O'connor wrote regarding the very same set of special issues presented for review here, and in response to the same argument advocated by the State of Texas in this case.  She wrote:

> " ... *Penry I* did not hold that the mere mention of mitigating circumstances to a capital sentencing jury satisfies the Eighth Amendment. Nor does it stand for the proposition that it is constitutionally sufficient to inform the jury that it may consider mitigating circumstances in deciding the appropriate sentence. Rather, the key under *Penry I* is that the jury be able to consider and *give effect to* [a defendants mitigating] evidence in imposing sentence. 492 U.S., at 319 (emphasis added). See also *Johnson* v. *Texas,* 509 U.S. 350, 381 (1993)

(*OConnor, J.,* dissenting) ([A] sentencer [must] be allowed to give *full* consideration and *full* effect to mitigating circumstances (emphasis in original)). For it is only when the jury is given a vehicle for expressing its reasoned moral response to that evidence in rendering its sentencing decision, *Penry I*, 492 U.S. at 328., that we can be sure that the jury has treated the defendant as a uniquely individual human bein[g] and has made a reliable determination that death is the appropriate sentence, *id.,* at 319 (quoting *Woodson* v. *North Carolina,* 428 U.S. 280, 304, 305 (1976))".

It is fairly clear the Supreme Court of the United States has determined that any interpretation of Penry I, by an advocate or a court, in line with what the State argues was correct, was simply wrong. There was no vehicle for the jury to give effect to their decision, and wishing cannot make it so. The Petitioner's claim is meritorious and he should be granted a new sentencing or factual development.

**Claim seven:**

The Petitioner argued before the Texas Court of Criminal Appeals, and now argues before this Honorable Court, that *Bush v. Gore*, 531 U.S. 98 (2000) quite simply created a completely new framework within which to

view equal protection complaints. The Petitioner has pointed out that the Supreme Court did not limit its choice of words; it stated that disparate treatment of citizens within the same state will now trigger equal protection review. It dealt with a voting case but the wording hinged upon the rights of citizens in the same state being handled in a disparate manner. It is a case of first impression in this circuit, and should be answered by this Honorable Court. The claim is also in no way *Teague*-barred since it falls under the exception, recognized in *Teague v. Lane*, of Justice Harlan's category of "principles essential to a concept of order liberty". *Teague*, at 305-310.

**Claim eight:**

The State argues in its response that there is neither implementing legislation available for the treaties mentioned under this claim, nor should Texas be obligated to enforce them as the United States has filed 'reservations" to the named provisions of the treaties.

Under the Supremacy Clause, Texas's rights are subordinate to those of the freely ratified and entered into treaty obligations of the United States. Thus, the State misapprehends Texas' status under such treaties. It is not a sovereign nation, though many Texans view the State in such a warm light. Texas cannot carve out exceptions for itself under the treaty as they are

meant, under the Supremacy Clause, to bind all the fifty states [small 's']
under our federal system. Likewise, once ratified, the treaties are in force
under constitutional law. Their provisions must be upheld, and if there is a
lack of implementing legislation then it falls, under the separation of powers
doctrine, to the Courts to interpret the existing law. This principle is
recognized in international common law and mentioned in the Petitioner's
application.

Likewise, it would be a violation of the separation of powers doctrines
for the executive, having once negotiated a treaty binding on all its states
and territories, and having submitted such a treaty for ratification to
Congress, to file 'reservations" after the fact. Unless theses reservations are
separately ratified they have no force, especially in our constitutional
system. The treaty stands as it was ratified, and in the absence of legislative
action, the courts are duty bound to interpret the provisions as best they can
given the facts presented by a particular case.

In this case before it the Court is presented with a state system which
has deprived all meaning from clemency, a guaranteed right under treaty
obligation. The ICPR specifically states that all condemned have the right to
seek clemency, and thus implicitly have the right to hope it could actually
occur.

In the past years literally hundreds of applications for commutation have passed the desk of the Board of Pardons and Paroles.    The only successful one was a case where the condemned was already set to be executed on another sentence.   The right to clemency is the right to a realistic chance at clemency, under clear guidelines that administer the applications fairly and openly, without regard to politics or race or any other wrongful factor.  This systems does not exist in Texas,

Yet this is just one example of unfairness under treaty obligation. The very procedures for selecting who is death eligible and who is not are fraught with too much discretion so that their application will naturally become uneven, and fly disproportionately against the poor, the racially different, and the mentally inform and frightening.  Texas has done little to ensure that such treaty obligations it has in enforcing fair and even application of the death penalty are even conducted.

This Court has the power to review violations of "laws and treaties" of the United States.   It must do so here, and find that the Petitioner's sentence and continued imprisonment violate the treaty obligations cited.

**Claim nine:**

The Petitioner reasserts his claim under *Bush v. Gore*, as cited in his application and herein earlier.  He re-urges his claims under *Furman* as well.

25

There is not, nor can there ever be, a rational basis for denying a right to those condemned while granting the boon to those who are simply imprisoned.

**Claim ten:**

In regards to the "standing requirement", the Petitioner respectfully asks the State to point out exactly why he lacks standing to attack a set of rules that will deprive him of his life? The Petitioner certainly has a fundamental right to life under the Constitution. He is already engaged in a suit of habeas against the Respondent, Cockrell, who administers the Texas Department of Criminal Justice, which also shares responsibilities with the Board of Pardons and Paroles. It is their very procedures [or more accurately, a lack of such procedures and their discriminatory application of what little they do have] that he challenges. There is no lack of a right, no lack of a controversy, and since habeas is an equitable remedy, to whom should the Petitioner turn if not here? His injury will not be theoretical, it will be fatal.

Should he perhaps sue in state court? Oops, there is that pesky "two-forums" rule while federal habeas is pending. Or perhaps a simultaneous federal civil rights action? Wait, there is that ripeness issue again; hmmm, one supposes that the deceased could wait until he is in fact

executed, and then his heirs could file on his behalf?  Where exactly does a condemned man turn when the set of procedures he clings to turns out to be a greased pole to speed him to his death?

This issue is justicable in this Court.  There is no place else for him to turn to in time if he does not raise this claim here, as any subsequent civil rights action will face the federal "subsequent writ" doctrine.  It is here or nowhere.

This claim is meritorious and should be granted or the subject of further fact-finding.

Claim eleven:

The Petitioner renews his query under the prior claim and asks that this Court determine his claim and grant relief, or in the alternative additional fact-finding.

Claim twelve:

The claim is one for life. It is based upon a simple fact: the Texas jury had to "guess" based upon what it saw, whether the Petitioner would be a future. To survive Eighth Amendment review there must be a judicial remedy available if they guessed wrong.

The Texas Court of Criminal Appeals already reviews future dangerousness on direct review.  Nine years have passed and new evidence

is available to check that jury guess. The Court is not substituting its judgement; it is verifying what is a reviewable answer to a mixed fact and law question. It must provide this review or else every state where "future danger" is a question can escape review.

WHEREFORE PREMISES CONSIDERED, the Petitioner prays that this Honorable Court deny the Respondents motion for summary judgment.

Respectfully Submitted,

Marc C. Carter
Attorney for the Petitioner
917 Franklin, Suite 300
Houston, Texas 77002
713/ 425-4304
713/ 425-4301 FAX

and

Patrick McCann
Attorney for the Petitioner
3700 N. Main
Houston, Texas 77009
713/ 223-3805

## Certificate of Service

I certify that a true and correct copy of this traverse was mailed to the Texas Attorney General's Office in Austin, Texas.


Richard Broughton
Office of the Attorney General
Capital Litigation Division
Post Office Box 12548, Capital Station
Austin, TX 78711
PH: (512) 936-1600

_____ 4.5.2002
Marc C. Carter