UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON HUGHES, III, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-01-4073 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

## ORDER

Preston Hughes, a Texas death-row inmate, faces an execution date of November 15, 2012. Eight years ago this Court considered, and denied, his petition for federal habeas corpus relief. Hughes has now filed a Motion for Relief from Judgment Pursuant to Federal Rules of Civil Procedure Rule 60(b). (Docket Entry No. 65). Hughes argues that this Court should reopen its judgment because the prosecution allegedly presented false evidence at trial. Hughes also asks this Court to stay his imminent execution (Docket Entry No. 66) and hold a hearing (Docket Entry No. 67). For the reasons discussed below, the Court **DENIES** Hughes' motions.

## BACKGROUND

Over two decades ago, a jury found Hughes guilty of capital murder. The Court of Appeals for the Fifth Circuit described the evidence supporting his capital conviction as follows:

> At Hughes's 1989 trial, the State presented evidence that Hughes stabbed both of the victims in the neck and chest, severing their aortas and jugular veins. When the police arrived at the scene, Shandra Charles was still alive. She told a police officer that a man named "Preston" had stabbed her after trying to rape her. The police officers went to an apartment complex near the vacant field in which the victims were found. The manager of the complex gave them a list of tenants. The only tenant named "Preston" was the petitioner. The police officers went to Hughes's apartment around 2:30 a.m. He agreed to accompany the officers to the police station, where he later gave two written statements in which he admitted that he had stabbed both of the victims.

>In the first statement, Hughes said that he had been carrying a knife with him because some people had been talking about trying to kill him. He said that, as he was walking home through the vacant field, someone came up behind him and touched him on the shoulder. He said he turned and "just started sticking with the knife." It was dark, and he could not tell who was there, but after he "stuck the first two times," he saw that it was Shandra Charles (Hughes called her "Shawn"). He said, "I was 'f***ed up and I just got scared and kept sticking.'"
>
>In the second statement, Hughes said "Shawn" did not come up behind him and tap him on the shoulder, as he had said in his first statement. Instead, he said that he saw her walking with a little boy. He said that when they met in the middle of the trail through the field, she told him that she was on her way to his apartment to borrow his contact lenses. When he told her that she was not going to wear his contacts, he said that she kissed him, and then started rubbing his crotch. He described in detail the events that occurred next. Suffice it to report that he said heavy sexual activity followed, which became unsatisfactory to Hughes. When "Shawn" demanded money, he refused. She threatened to accuse him of rape and when she hit him, he pulled his knife and began stabbing her. The little boy with "Shawn" looked up at him and started crying. When the boy ran between Hughes and "Shawn," Hughes stabbed him several times.
>
>At the guilt-innocence phase of the trial, Hughes took the stand in his own defense. He denied that he killed the victims, claimed that he was framed by the police, and testified that he confessed to the crimes only because the police officers struck him and threatened him, causing him to fear for his life. The jury found him guilty of capital murder.

*Hughes v. Quarterman*, 530 F.3d 336, 339 (5th Cir. 2008).

After unsuccessfully availing himself of Texas state appellate and habeas remedies, Hughes filed a federal petition for a writ of habeas corpus in 2001 raising twelve grounds for relief. Among those claims, Hughes argued that the prosecution had violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1966) by failing to disclose DNA evidence relating to blood and semen taken from the crime scene. In 2004, this Court entered a Memorandum and Order denying habeas relief. (Docket Entry No. 34). With regard to his *Brady* claim, the Court first found that Hughes had defaulted federal consideration of its merits by presenting it to the state courts in a procedurally improper manner. The Court also found that the claim lacked merit. (Docket Entry No. 34 at 28-32). The Court of Appeals for the Fifth Circuit affirmed this Court's

denial of habeas relief. *Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S. Ct. 2378 (2009). The State of Texas set an execution date.

Hughes now asks the Court to reopen its judgment. Hughes argues that "current facts . . . show that this Court's earlier decision and dismissal" were done before he discovered "fraud, misconduct, and perjured testimony" that "was not part of the record before the Court." (Docket Entry No. 65 at 1). Linking his Rule 60(b) motion to his earlier *Brady* claim, Hughes bases his claim of perjured trial testimony on two facts:

> 1. An affidavit from Dr. Robert Lloyd White, deputy medical examiner for Tarrant County, Texas, rendering an opinion "based on the autopsy report entered into evidence at trial" that it would be "neither anatomically nor physiologically possible" for one victim to have survived long enough to incriminate Hughes. (Docket Entry No. 65 at 1, 4).
>
> 2. Trial testimony stated that Hughes had signed a "consent to search" form at 5:30 a.m. on the morning after the murder that resulted in the seizure of incriminating items. Hughes, however, alleges that logs from the police department property room show that the police had checked in the items three hours earlier. Hughes argues that the police lied about obtaining his consent and about finding the incriminating items in his apartment.

Respondent argues that Hughes' Rule 60(b) motion is actually a procedurally inadequate successive habeas petition and is otherwise without merit. Respondent also urges the Court to deny Hughes' motion for a hearing and to stay his execution. (Docket Entry No. 69).

## ANALYSIS

Rule 60(b) gives a court broad equitable power to "relieve a party or a party's legal representative from a final judgment, order, or proceeding[.]" Nevertheless, a party must show "extraordinary circumstances" to reopen a final judgment. *Ackermann v. United States*, 340 U.S. 193, 199 (1950). Hughes specifically seeks to reopen judgment under subsections (1), (2), and (6) of Rule 60(b). Hughes must show "mistake, inadvertence, surprise or excusable neglect,"

"newly discovered evidence that, with reasonable diligence, could not have been discovered previously," or "any other reason that justifies relief." FED. R. CIV. P. 60(b). The Court will deny Hughes' Rule 60(b) motion both as untimely and as an improperly filed successive habeas petition.

I.   **Timeliness**

Rule 60(b) does not permit open-ended relief from a final judgment. A party must seek relief under Rule 60(b) "no more than a year after the entry of the judgment" if proceeding under subsections 60(b) (1) through (3), or "within a reasonable time" if proceeding under the remaining subsections. FED. R. CIV. P. 60(c)(1). Here, this Court entered judgment over eight years ago. Rule 60(b) relief is not available to Hughes under subsections (1) or (2).

Because Hughes also asks for relief under Rule 60(b)(6), which allows for reconsideration for "any other reason that justifies relief," this Court must decide whether Hughes has raised his Rule 60(b) motion "within a reasonable time." What constitutes a "reasonable time" depends on the facts of the case, "taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Travelers Ins. Co. v. Liljeberq Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994). Hughes has not shown why he could not have sought relief from the judgment until now, nearly eight years later and immediately before his execution date. The foundation for his Rule 60(b) motion – medical information from the autopsy report and inferences from the police property room logs – has existed since before trial. As noted by Respondent, "it is clear that all of the evidence could have been discovered long before he filed this last-minute motion." (Docket Entry No. 69 at 7). Hughes has not presented any facts that would show good cause for failing to connect that foundation to a *Brady* claim well before his

execution became imminent.[1]  The Court finds that dismissal is warranted because Hughes did not present his Rule 60(b) motion in a timely manner.

## II.     Successiveness

Federal habeas corpus review provides an important, but limited, examination of state criminal judgments.  The statutory provisions encapsulated in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") serve to create, with limited exceptions, a one-bite-at-the-apple procedure in habeas cases.  *See* 28 U.S.C. § 2244(b); *Felker v. Turpin*, 518 U.S. 651, 659-665 (1996).  Unless explicitly compliant with the purpose of Rule 60(b), a post-judgment motion may violate the AEDPA's limitation on filing successive habeas petitions.  *See Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005).

In *Gonzalez*, the Supreme Court distinguished between a valid Rule 60(b) motion and a successive habeas petition.  A true Rule 60(b) motion in a habeas case identifies "some defect in the integrity of the federal habeas proceeding," such as a procedural error in determining non-substantive issues such as "failure to exhaust, procedural default, or statute-of-limitations bar." *Id*. at 532 n.4.  However, the *Gonzalez* Court "explain[ed] that a [post-judgment] motion is a habeas claim when it presents a new claim for relief, or when it presents new evidence in support of a claim already litigated, or when it asserts a change in the substantive law governing the claim, or when it attacks the federal court's previous resolution of a claim on the merits." *Ruiz v. Quarterman*, 504 F.3d 523, 526 (5th Cir. 2007) (footnote omitted).  The Court must decide whether Hughes' Rule 60(b) motion is actually a successive habeas petition.

---

[1]      Elsewhere, Rule 60(d)(3) gives a federal court power to "set aside a judgment for fraud on the court."  No time limitation impedes a federal court from granting relief under Rule 60(d)(3).  *See Buck v. Thaler*, 452 F. App'x 423, 431 (5th Cir. 2011).  Hughes specifically invokes only Rule 60(b)(1), (2), and (6), though in his conclusion he states that this Court should reopen judgment "in light of the new evidence of perjured testimony resulting in fraud on this and every other court." (Docket Entry No. 65 at 10).  Even if Hughes intended to rely on Rule 60(d)(3), federal law requires to dismiss his current motion as a successive federal habeas petition.

Hughes argues that his new allegations do not raise a new "claim," but merely supplement the *Brady* claim he raised in his initial petition. Also, he argues that the new allegations amount to "fraud on the Court through perjured testimony." (Docket Entry No. 65 at 3). However, instead of showing procedural concerns about the manner in which the Court adjudicated the initial habeas petition, Hughes' Rule 60(b) motion attacks the integrity of his conviction. When a Rule 60(b) motion "seek[s] leave to present 'newly discovered evidence'. . . in support of a claim previously denied . . . such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." *Gonzalez*, 545 U.S. at 531. The allegations in Hughes' current pleading constitute new grounds for habeas relief, especially since the factual underpinnings of his new arguments differ fundamentally from the *Brady* claim he advanced in his initial petition. Hughes' Rule 60(b) motion is a successive habeas petition.

Hughes' arguments that the new allegations prove fraud on the Court cannot save his Rule 60(b) motion. Hughes complains that the police and prosecution manufactured evidence about the victim's dying declaration and the search of his apartment. Even if that were true, those circumstances do not amount to "fraud on the court" as understood by Rule 60(b). "To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion." *Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999). "[O]nly the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence *by a party* in which an attorney is implicated, will constitute a fraud on the court." *Id*. (emphasis added). The Fifth Circuit has explicitly held that allegations of perjury by the trial actors do not taint the responding party – Texas Department of Criminal Justice, Institutional Corrections Division – in a federal habeas action. *See id.* Hughes levels allegations of fraud against the police and prosecution team, but has not shown any

attempt by Respondent in these proceedings to obfuscate the record or hide information.

Moreover, he has not alleged that the two pieces of evidence upon which he bases his Rule 60(b) motion – the autopsy report and the property room logs – were unavailable to his attorneys at trial, much less before the Court entered judgment. Because he has not shown that Respondent has tried to improperly influence the adjudication of the claims in the initial petition, Hughes has not shown fraud on the court.

The AEDPA requires an inmate to seek authorization from the appellate courts before filing a second or successive federal habeas petition. *See* 28 U.S.C. § 2244(b)(3)(A). As the AEDPA gives only circuit courts power to allow the filing of a successive petition, *see* 28 U.S.C. § 2244(b)(3)(A), this Court presently cannot consider the merits of Hughes' new allegations. The Court, therefore, will dismiss his action. Should Hughes seek additional judicial consideration of the facts presented in his latest pleading, he must seek authorization from the Fifth Circuit.

## CONCLUSION

The Court finds that Hughes' Rule 60(b) is both untimely and a successive habeas petition. Accordingly, the Court finds no basis upon which to stay his execution or hold an evidentiary hearing. The Court, therefore, **DENIES** Hughes' pending post-judgment motions. Under the applicable standards, the Court finds that no issue from this disposition requires appellate review through a Certificate of Appealability. *See 28 U.S.C. §2253(c).*

SIGNED at Houston, Texas this 7th day of November, 2012.

_____
Kenneth M. Hoyt
United States District Judge